Jon G. Shadinger Jr., Esq. (036232017)
Shadinger Law, LLC
2220 N. East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
TRENTON VICINAGE**

| | |
|---|---|
| DENNIS MAURER, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>SUPERSTAR INN, INC., a New Jersey Corporation,<br><br>Defendant. | Case No. 3:26-cv-14085<br><br>**COMPLAINT** |

## Introduction

Plaintiff, DENNIS MAURER, an individual ("Plaintiff"), on his own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sues the Defendant, SUPERSTAR INN, INC., a New Jersey Corporation ("Defendant"), for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("LAD").

## The Parties

1. Plaintiff, DENNIS MAURER, is an individual over eighteen years of age and is otherwise *sui juris*. Mr. Maurer resides at 8 Prospect Avenue, Egg Harbor Township, NJ 08234.

2. Defendant, SUPERSTAR INN, INC., owns and/or operates a place of public accommodation alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD. Defendant's main business address, as reported to the New Jersey Division of Revenue, is 56 Webster Avenue, Seaside Heights, NJ 08751.

**Jurisdiction and Venue**

3. Defendant's property/place of public accommodation – a motel known as the Sunset Motel – is located at 56 Webster Avenue, Seaside Heights, NJ 08751 (also known as Block 6.01, Lot 54 on the municipal tax map of the Borough of Seaside Heights, Ocean County) (the "Property", the "Motel", or "Sunset Motel").

4. Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs. The Property is located in and does business within this judicial district.

5. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*[1]

6. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C. § 1367.

7. The Defendant owns, leases, leases to, and/or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendant is thus required to comply with the obligations of the ADA.[2]

---

[1] *See also* 28 U.S.C. §§ 2201 and 2202.
[2] 28 C.F.R. §§ 36.201(a) and 36.104.

8. Plaintiff is an individual with disabilities as defined by and pursuant to the ADA. Mr. Maurer has multiple sclerosis and therefore has a physical impairment that substantially limits many of his major life activities[3] including, but not limited to, not being able to walk, stand, reach, or lift. Mr. Maurer, at all times, requires the use of a wheelchair to ambulate.

## **Factual Background**

9. Mr. Maurer is a staunch advocate of the ADA. Since becoming mobility impaired (and having to fully rely on the use of his wheelchair to ambulate) he has dedicated his life to the elimination of accessibility discrimination so that he, and others like him, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers.

10. Mr. Maurer is the President of an advocacy group, known as The Independence Project, whose goal is to foster a community of disabled people, educate them as to their rights, and ensure their accessibility to places of public accommodation across the country.

11. Mr. Maurer continues to encounter architectural barriers at many of the places that he visits. Seemingly trivial architectural features such as parking spaces, curb ramps, and door handles are taken for granted by the non-disabled but, when improperly designed or implemented, can be arduous and even dangerous to those in wheelchairs – the same holds true for the Property which forms the basis of this action.

12. The barriers to access that Mr. Maurer experiences at differing places of public accommodation are often similar in nature. For example, he is repeatedly faced with sloping in parking lots, improper curb ramps, abrupt changes of level within paths of travel, and non-accessible restrooms (even when designated “accessible” or “handicapped”). This holds true for

---

[3] As defined by 28 C.F.R. § 36.105(b)(1)–(2).

hotel rooms as well; he is often faced with a lack of maneuverability within the room and a lack of accessible features within the restrooms. He has become frustrated and disheartened by the repetitiveness of the complaints he has been forced to make to the employees and management at various establishments in the past; most often to no avail. Thus, he now finds his redress through the ADA; as Congress intended.

13. As part of his duties within The Independence Project, Mr. Maurer inspects properties that were previously in violation of the ADA and subject to litigation by the advocacy group and/or its members. Such properties are inspected by Mr. Maurer, or other members (based on scheduling and geography), in order to determine if such have been made accessible and continue to remain in compliance; it is his normal practice to inspect the properties under his purview at least twice per year. Additionally, Mr. Maurer inspects additional properties that he visits as a patron, or when they are incident to his inspection routes, and/or when they are along his usual travel routes.

14. The properties in close proximity to the Property which have previously been subject to litigation by The Independence Project and/or its members for non-compliance with the ADA, and are now subject to reinspection by Mr. Maurer, include the following:

a. 600 Fischer Boulevard, Toms River, NJ 08753; *The Independence Project, Inc. v. Bonsangue*, No. 3:19-cv-07121 (D.N.J. filed Feb. 27, 2019)

b. 1808 Route 37, Toms River, NJ 08753; *The Independence Project, Inc. v. Fiesta Plaza Associates, LLC*, No. 3:19-cv-04890 (D.N.J. filed Feb. 6, 2019)

c. 931–953 Fischer Boulevard, Toms River, NJ 08753; *The Independence Project, Inc. v. Hovnanian*, No. 3:19-cv-07113 (D.N.J. filed Feb. 27, 2019)

d. 446 Route 37, Toms River, NJ 08753; *The Independence Project, Inc. v. Briad Wenco, L.L.C.*, No. 3:19-cv-06943 (D.N.J. filed Feb. 26, 2019)

15. Mr. Maurer has stayed at the Property as a guest; his most recent visit occurred on or about August 26, 2026. Upon arriving at the Property, Mr. Maurer requested an accessible guestroom and was provided Room 103, a ground-floor guestroom which the Motel's staff represented to be its designated accessible guestroom. On this occasion, Mr. Maurer visited the Property as a bona fide patron with the intent to avail himself of the goods and services offered to the public within but found that the Property was rife with violations of the ADA – both in architecture and in policy.

16. Mr. Maurer intends to return to the Property and will need accurate accessibility information in order to book future stays. However, the Motel's own website and online reservation service provide no information regarding the accessible features of the Motel or its guestrooms, while third-party booking websites represent that the Motel provides accessible and van-accessible parking, a front entrance ramp, and wheelchair accessible units – representations which are inaccurate, as set forth in Paragraph 33. Without accurate information Mr. Maurer cannot assess independently whether the Motel or a given guestroom meets his accessibility needs before booking a stay.

17. Mr. Maurer and his family frequently vacation at the Jersey Shore. In doing so, Mr. Maurer has stayed at the Property and at several other hotels on the barrier island and in the surrounding area,[4] and he plans to continue to do so in the future when his family is vacationing at the Jersey Shore, including near Long Beach Island and Seaside Heights. The Property is located in Seaside Heights, one-half block from the boardwalk and beach.

---

[4]Including Cloud 9 Inn, 124 Hamilton Avenue, Seaside Heights, NJ 08751; and Howard Johnson by Wyndham Toms River, 955 Hooper Avenue, Toms River, NJ 08753.

18. Further, Mr. Maurer travels to the area approximately once per month to visit Eastern Dental in nearby Manahawkin for his son's ongoing orthodontia treatments.[5] Moreover, each member of Mr. Maurer's family uses Eastern Dental as their general dental practitioner for regular cleanings and other dental work.

19. Prior to the onset of his disease and his ensuing disability, Mr. Maurer was a licensed thoroughbred horse trainer and assistant horse trainer for over twenty-five years. Horseracing remains his passion; he attends workouts, trainings, sales, and live racing whenever possible – as such he regularly travels across New Jersey, Pennsylvania, Delaware, and New York. The horse racing venues/farms frequently traveled to by Mr. Maurer include, but are not limited to, the following:

a. Delaware Park Race Track, located at 777 Delaware Park Blvd, Wilmington, DE 19804

b. Harrah's Philadelphia Racetrack, located at 777 Harrah's Blvd, Chester, PA 19013

c. Parx Racing, located at 2999 Street Rd, Bensalem, PA 19020

d. Penn National Race Course, located at 777 Hollywood Blvd, Grantville, PA 17028

e. Monmouth Park, located at 175 Oceanport Ave, Oceanport, NJ 07757

f. Meadowlands Racetrack, located at 1 Racetrack Dr, East Rutherford, NJ 07073

g. Saratoga Race Course, located at 267 Union Ave, Saratoga Springs, NY 12866

20. On occasion, when attending live racing at Monmouth Park, Mr. Maurer stays overnight at hotels in proximity to the Property.

21. In sum, the Property is (1) a motel at which Mr. Maurer has stayed as a guest and will continue to stay when vacationing at the Jersey Shore with his family, (2) near several other

---

[5] Eastern Dental, Manahawkin Village Shopping Center, 715 Route 72 West, Manahawkin, NJ 08050.

properties inspected by Mr. Maurer for ADA compliance, (3) in the area to which he travels approximately once per month for his family's dental care in Manahawkin, and (4) in proximity to the hotels at which he stays overnight when attending live racing at Monmouth Park.

22. Mr. Maurer will return to the Property in the future as a guest when vacationing at the Jersey Shore with his family, when traveling to the area for his family's dental appointments in Manahawkin, when staying overnight in the area while attending live racing at Monmouth Park, and when performing inspections at the properties in the vicinity. Mr. Maurer shall make these visits not only as a patron but also to monitor any progress made with respect to ADA compliance – he hopes his return visits are not further deterred nor made in vain.

23. Mr. Maurer has physically visited the Property and personally encountered exposure to architectural barriers and otherwise harmful conditions that have caused him embarrassment and frustration and endangered his safety during his stay at the Property.

24. The ADA has been law for over thirty (30) years and yet the Property remains non-compliant. Thus, Mr. Maurer has actual notice and reasonable grounds to believe that he will continue to be subjected to discrimination by the Defendant.

25. Mr. Maurer has a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described, but not necessarily limited to the barriers he has personally encountered or observed – which are listed in Paragraph 33 of this complaint.

26. Following any resolution of this matter Plaintiff will ensure that the Defendant undertakes the remedial work that is required to cure existing violations, under the appropriate standard, and in full compliance with the ADA.

**<u>COUNT I</u>**
**Violation of Title III of the**
**Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.***

27. Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

28. Enacted by overwhelming bipartisan consensus in 1990, and reinforced with the same consensus in 2008, the ADA reflects Congress's recognition that "discrimination" has precluded "many people with physical or mental disabilities" from "fully participat[ing] in all aspects of society."[6]

29. Congress's objective was "the elimination or reduction of physical and social structures" that thwart "equal-citizenship stature for persons with disabilities."[7]

30. Title III of the ADA provides a cause of action to "any person" with disabilities who personally encounters an unlawful accessibility barrier and is thus "subjected to discrimination on the basis of disability."[8]

31. The Defendant has discriminated against the Plaintiff, and other similarly situated mobility impaired persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

32. A preliminary inspection of the Property has shown that violations of the ADA exist. That inspection, performed by Plaintiff's expert, further revealed that the remediation of all violations/barriers listed in Paragraph 33 is both technically feasible and readily achievable. Plaintiff's expert has based this judgment on personal knowledge of materials, pricing, labor, and

---

[6] 42 U.S.C. § 12101(a)(1).
[7] *Tennessee v. Lane*, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring).
[8] 42 U.S.C. § 12188(a)(1).

the completion of similar projects in the area. The remaining barriers to access – which are procedural in nature and/or policy based – will need to be monitored into the future to ensure that the current discrimination is ceased and never reinstituted.

33. The following are architectural barriers and violations of the ADA that Mr. Maurer has either personally encountered or observed during his stay at the Property, including barriers that precluded him from accessing certain areas and features of the Property:

**Parking and Exterior Accessible Route**

a. The Property fails to provide any accessible parking – none of the spaces in the Motel's parking lot is designated as accessible or marked with the International Symbol of Accessibility, no van-accessible space is provided, and no space is served by a marked access aisle; violations of the ADAAG and Sections 208, 208.2, 208.2.4, 502, 502.2, and 502.3 of the 2010 ADA Standards, which require the number of accessible parking spaces set by Table 208.2 – at least one accessible space where 1 to 25 total spaces are provided – with at least one of every six accessible spaces, and in all cases at least one, being van accessible; car spaces at least 96 inches wide and van spaces at least 132 inches wide (or 96 inches wide with a 96-inch access aisle); and each accessible space to be served by an access aisle at least 60 inches wide that extends the full length of the space, is marked so as to discourage parking in it, and adjoins an accessible route. Mr. Maurer's van utilizes a fold-out ramp which requires an access aisle in order to fully extend; without one he cannot safely deploy his ramp, and parking without the benefit of an access aisle adds the additional fear of becoming blocked out from his van (or trapped inside) by an adjacent vehicle.

b. No parking space at the Property is identified by a vertical sign displaying the International Symbol of Accessibility, and no space is designated “van accessible”; a violation of the ADAAG and Sections 216.5 and 502.6 of the 2010 ADA Standards, which require accessible parking spaces to be identified by signs showing the International Symbol of Accessibility mounted with the bottom of the sign at least 60 inches above the finish floor or ground surface, with van parking spaces additionally designated “van accessible.” Without designated and identified accessible parking, no space is reserved from which Mr. Maurer can safely deploy his ramp.

c. The route connecting the public sidewalk along Webster Avenue to the walkway serving the Motel’s lobby and guestroom entrances is not accessible – it is impeded by excessive cross slopes and abrupt changes in level; violations of the ADAAG and Sections 206.2.1, 303, and 402 of the 2010 ADA Standards, which require at least one accessible route within the site from public streets and sidewalks, public transportation stops, and accessible parking to an accessible building entrance, and require accessible routes to have a running slope no steeper than 1:20 (5%), a cross slope no steeper than 1:48 (2.08%), a clear width of at least 36 inches, and no vertical changes in level greater than ¼ inch (with changes between ¼ inch and ½ inch beveled no steeper than 1:2). These conditions limit Mr. Maurer’s options for access and transportation and prevent him from safely traveling between the Motel and the public sidewalk – and the boardwalk and beach one-half block away – in his wheelchair.

d. The covered ground-floor walkway serving the guestrooms and lobby is raised above the parking lot, with abrupt changes in level at its edge and no curb ramp connecting it to the parking area, and its surface contains cracks and uneven joints; violations of the ADAAG and Sections 303, 402, and 406 of the 2010 ADA Standards, which require accessible routes to have a running slope no steeper than 1:20 (5%), a cross slope no steeper than 1:48 (2.08%), a clear width of at least 36 inches, and no vertical changes in level greater than ¼ inch (with changes between ¼ inch and ½ inch beveled no steeper than 1:2), and require changes in level greater than ½ inch to be ramped, with curb ramps to have a running slope no steeper than 1:12 (8.33%), a cross slope no steeper than 1:48 (2.08%), flared sides no steeper than 1:10, and a level landing at least 36 inches long at the top. These conditions have presented Mr. Maurer with a tipping hazard which could cause injury from a fall and damage to his wheelchair.

e. The clear width of the ground-floor walkway is reduced below the minimum by the through-wall heating and air conditioning units projecting from the building wall, the stairway support posts, and the front ends of vehicles parked nose-in against the walkway, which has no wheel stops, curb, or other means of keeping parked vehicles from overhanging it; violations of the ADAAG and Sections 403.5.1 and 502.7 of the 2010 ADA Standards and 28 C.F.R. § 36.211, which require accessible routes to have a clear width of at least 36 inches, reduced to no less than 32 inches only for a length of 24 inches maximum, and require parking spaces to be designed so that cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes, and require a public accommodation to maintain its

accessible features in operable working condition. These obstructions narrow the only route to the guestroom entrances and the lobby, impeding Mr. Maurer's travel along the walkway in his wheelchair.

f. Loose, unsecured rubber floor mats are placed in front of the guestroom entrance doors along the walkway, creating unstable surfaces and changes in level directly in front of each door; violations of the ADAAG and Sections 302.1, 302.2, and 303 of the 2010 ADA Standards and 28 C.F.R. § 36.211, which require floor and ground surfaces on accessible routes to be stable, firm, and slip resistant, and require carpet and mats to be securely attached, with a pile no higher than ½ inch and exposed edges fastened to the floor with trim along the entire length of the exposed edge, and require a public accommodation to maintain its accessible features in operable working condition. The loose mats present an unstable surface and a change in level at the guestroom doors, precisely where Mr. Maurer must maneuver his wheelchair to open the door.

**<u>Access to Goods and Services</u>**

g. The registration and check-in counter in the Motel's lobby is too high – no portion of the counter is lowered for use by persons in wheelchairs; a violation of the ADAAG and Sections 227.3 and 904.4 of the 2010 ADA Standards, which require that, where sales and service counters are provided, at least one of each type comply with Section 904, including a portion of the counter at least 36 inches long and no higher than 36 inches above the finish floor, with a clear floor space positioned for a parallel or forward approach. Due to the height of the counter Mr. Maurer cannot

make use of it to check in, sign his registration, and conduct his transactions in the same manner as non-disabled guests.

h. The self-service amenities in the Motel's lobby – including the coffee machine, snacks, and associated cups, condiments, and supplies – are placed beyond the prescribed reach ranges; a violation of the ADAAG and Sections 227.4, 308, and 904.5.1 of the 2010 ADA Standards, which require self-service shelves and dispensing devices for tableware, dishware, condiments, food, and beverages to be located within the reach ranges of Section 308 – no higher than 48 inches and no lower than 15 inches above the floor for an unobstructed reach – with a clear floor space at least 30 inches by 48 inches. Due to their height Mr. Maurer cannot independently serve himself from these amenities.

**<u>Guestrooms</u>**

i. Mr. Maurer requires a mobility accessible guestroom. Based on the total number of guestrooms at the Motel (upon information and belief, 17), Section 224.2 of the 2010 ADA Standards requires at least one (1) mobility accessible guestroom. Upon information and belief, the Motel provides no guestroom with mobility features – including the guestroom provided to Mr. Maurer and purported to be accessible (Room 103), which, as set forth below, lacks the features Mr. Maurer requires; a violation of the ADAAG and Sections 224.2 and 806.2 of the 2010 ADA Standards, which require that, where 1 to 25 guestrooms are provided, at least one guestroom provide mobility features complying with Section 806.2, including accessible living and dining areas, a clear floor space on both sides of a bed, a bathroom

complying with Section 603, kitchens and kitchenettes complying with Section 804, and a turning space within the guestroom.

j. The entrance door to the guestroom provided to Mr. Maurer has a raised threshold above the walkway and is equipped with knob-type hardware that requires tight grasping and twisting of the wrist to operate; violations of the ADAAG and Sections 206.5.2, 309.4, 404.2.5, and 404.2.7 of the 2010 ADA Standards, which require at least one door serving each accessible room or space, including each guestroom required to provide mobility features, to comply with Section 404, including thresholds no higher than ½ inch (¾ inch for existing or altered thresholds, beveled no steeper than 1:2), and door hardware operable with one hand without tight grasping, pinching, or twisting of the wrist, mounted 34 to 48 inches above the floor. Due to these barriers Mr. Maurer cannot freely enter and exit his guestroom without assistance.

k. The bathroom door in the guestroom provided to Mr. Maurer does not provide the required clear opening width, and its bathroom lacks a turning space and the clear floor space required at its fixtures; violations of the ADAAG and Sections 206.5.3, 404.2.3, 603.2.1, 603.2.3, and 806.2.4 of the 2010 ADA Standards, which require doors and doorways providing passage into and within all guestrooms – including guestrooms not required to provide mobility features – to have a clear opening width of at least 32 inches, and require bathrooms in guestrooms with mobility features to provide a turning space (a 60-inch diameter circle or a T-shaped space) within the toilet and bathing room, and doors that do not swing into the clear floor

space of any fixture. Due to these barriers Mr. Maurer cannot enter, turn around within, and exit the bathroom in his wheelchair.

l. The bathtub in the guestroom provided to Mr. Maurer lacks grab bars, a permanent or removable in-tub seat, a hand-held shower spray unit, and controls located for use from a seated position, and the clear floor space alongside the tub is obstructed by the water closet and lavatory; violations of the ADAAG and Sections 607.2, 607.3, 607.4, 607.5, 607.6, and 806.2.4 of the 2010 ADA Standards, which require bathtubs in guestrooms with mobility features to provide a clear floor space alongside the bathtub at least 30 inches wide and 60 inches long, a permanent seat at the head end of the tub or a removable in-tub seat, grab bars on the back wall and control end wall, controls located between the open side of the tub and the midpoint of its width, and a hand-held shower spray unit with a hose at least 59 inches long that can be used both as a fixed-position shower head and as a hand-held shower. Due to these barriers Mr. Maurer cannot safely transfer to nor make use of the bathtub.

m. The water closet in the guestroom provided to Mr. Maurer lacks side-wall and rear-wall grab bars, and the required clearance around the water closet is not provided; violations of the ADAAG and Sections 604.2, 604.3, 604.5, 609, and 806.2.4 of the 2010 ADA Standards, which require in guestrooms with mobility features, the water closet centerline to be 16 to 18 inches from the side wall, a clearance around the water closet at least 60 inches wide and 56 inches deep, and a side-wall grab bar at least 42 inches long and a rear-wall grab bar at least 36 inches long mounted

33 to 36 inches above the floor. Without grab bars or the required clearance Mr. Maurer cannot safely transfer to and from the toilet.

n. The pedestal lavatory in the guestroom provided to Mr. Maurer does not provide the knee and toe clearance required for a forward approach; a violation of the ADAAG and Sections 306, 606.2, and 806.2.4 of the 2010 ADA Standards, which require in guestrooms with mobility features, a clear floor space positioned for a forward approach at lavatories, with knee clearance at least 27 inches high and toe clearance at least 9 inches high beneath the lavatory, and the front of the lavatory rim no higher than 34 inches above the floor. Mr. Maurer cannot fully approach the sink from his wheelchair in order to wash his hands.

o. The shelf holding the toiletries and toilet paper above the water closet, and the mirror, in the bathroom of the guestroom provided to Mr. Maurer are mounted beyond the prescribed reach ranges; violations of the ADAAG and Sections 603.3, 603.4, and 806.2.4 of the 2010 ADA Standards, which require in guestrooms with mobility features, mirrors located above lavatories or countertops to be installed with the bottom edge of the reflecting surface no higher than 40 inches above the floor, and shelves to be located no higher than 40 inches above the floor. Due to their height Mr. Maurer cannot reach the toiletries nor make use of the mirror.

p. The kitchenette in the guestroom provided to Mr. Maurer is inaccessible: the sink is set in a base cabinet with no knee or toe clearance, no section of counter provides a kitchen work surface no higher than 34 inches with a forward approach, and the open storage shelf is mounted above the sink beyond the prescribed reach ranges; violations of the ADAAG and Sections 606.2, 804.3, 804.4, 804.5, 806.2.5, and

811 of the 2010 ADA Standards, which require kitchens and kitchenettes in guestrooms with mobility features to comply with Section 804, including a sink complying with Section 606 with knee and toe clearance for a forward approach, at least one 30-inch-wide section of counter no higher than 34 inches above the floor providing a kitchen work surface with a clear floor space positioned for a forward approach, and at least 50 percent of shelf space in storage facilities within the reach ranges of Section 308. Due to these barriers Mr. Maurer cannot make use of the kitchenette.

q. The guestroom provided to Mr. Maurer (two beds) does not provide the required clear floor space beside the beds or a turning space within the room; violations of the ADAAG and Sections 806.2.3 and 806.2.6 of the 2010 ADA Standards, which require in guestrooms with mobility features, at least one sleeping area to provide a clear floor space at least 30 inches by 48 inches on both sides of a bed, and a turning space (a 60-inch diameter circle or a T-shaped space) within the guestroom. Due to the lack of clear floor space Mr. Maurer cannot position his wheelchair alongside a bed in order to transfer, nor turn around freely within the room.

r. The closet shelving in the guestroom provided to Mr. Maurer is mounted beyond the prescribed reach ranges; a violation of the ADAAG and Sections 225.2, 308, 806.2, and 811 of the 2010 ADA Standards, which require that, where storage is provided in accessible spaces, including guestrooms with mobility features, at least one of each type be located within the reach ranges of Section 308 – no higher than 48 inches and no lower than 15 inches above the floor for an unobstructed reach –

with a clear floor space at least 30 inches by 48 inches. Due to its height Mr. Maurer cannot make use of the closet storage.

s. The fire extinguisher in the guestroom provided to Mr. Maurer is mounted beyond the prescribed reach ranges; a violation of the ADAAG and Sections 205.1, 308, and 309.3 of the 2010 ADA Standards, which require operable parts on accessible elements, on accessible routes, and in accessible rooms and spaces to be located within the reach ranges of Section 308 – no higher than 48 inches and no lower than 15 inches above the floor for an unobstructed reach. Due to its height Mr. Maurer cannot reach the fire extinguisher in the event of an emergency – a barrier which endangers his safety.

Reservations and Accessibility Information

t. Sunset Motel’s own website (sunsetmotelseaside.com) and its online reservation service do not identify or describe any accessible features of the Motel or its guestrooms; a violation of 28 C.F.R. § 36.302(e)(1)(ii), which requires a place of lodging, with respect to reservations made by any means, to identify and describe the accessible features in the hotel and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs. Without this information Mr. Maurer cannot determine, before booking, whether any guestroom at the Motel will be usable by him.

u. The accessibility information published for the Motel through third-party reservation services is inaccurate – Booking.com lists “Accessible parking,” states that “Some units are wheelchair accessible,” and lists “Entire unit located on ground

floor"; Hotels.com and Expedia list "Wheelchair-accessible van parking" and a "Front entrance ramp"; and Expedia states that the Property is "Wheelchair accessible (may have limitations)," while, as set forth above, the Motel provides no accessible parking, no van-accessible parking, and no guestroom with mobility features; violations of 28 C.F.R. § 36.302(e)(1)(i) and (ii), which apply to reservations made by any means, including through a third party, and require a place of lodging to ensure that individuals with disabilities can make reservations for accessible guest rooms in the same manner as individuals who do not need accessible rooms, and to identify and describe its accessible features in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs. These representations mislead mobility impaired patrons, like Mr. Maurer, into booking a stay at a Motel which cannot accommodate them.

34. Each of the foregoing architectural barriers is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 C.F.R. part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified as Appendices B and D to 36 C.F.R. part 1191 ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[9]

[9] 28 C.F.R. § 36.104.

35. Additionally, a Justice Department regulation commonly referred to as the Reservation Rule, 28 C.F.R. § 36.302(e)(1), explains that Title III requires hotels to ensure that their reservation services include the accessibility information necessary for disabled people to enjoy the services as fully as non-disabled people. The Reservation Rule provides that under Title III, a "place of lodging" must "with respect to reservations made by any means, including by telephone, in-person, or through a third party ... [i]dentify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs."[10]

36. Under the Reservation Rule, a hotel's obligations extend to "reservations made by any means, including … through a third party."[11] Thus, hotels "must provide these third-party services with information concerning the accessible features of the hotel and the accessible rooms."[12]

37. The deficiencies in the Motel's reservation services described in Paragraph 33 violate the Reservation Rule, as they do not permit mobility impaired patrons, like Mr. Maurer, to assess independently whether the Motel or a given guestroom meets their accessibility needs, and thus deprive them of the information with which to make an informed decision to book a stay. The Reservation Rule likewise applies to reservations made in person: when Mr. Maurer requested an accessible guestroom upon his arrival, the Motel represented Room 103 to be its designated accessible guestroom although, as set forth in Paragraph 33, that guestroom lacks the features required of a guestroom with mobility features and the Motel provides no such guestroom.

---

[10] 28 C.F.R. § 36.302(e)(1)(ii).

[11] 28 C.F.R. § 36.302(e)(1).

[12] 28 C.F.R. pt. 36, app. A (Guidance on Revisions to ADA Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and Commercial Facilities, § 36.302(e) Hotel Reservations).

38. The discriminatory violations described in Paragraph 33 may not be an exhaustive list of the ADA violations that exist at the Property, but they are the result of a preliminary inspection and include those personally encountered or observed by Mr. Maurer. Given the violations discovered and listed herein, the Plaintiff alleges, on information and belief, that there are other violations/barriers at the Property which relate to his disability. Thus, Plaintiff requires thorough inspection of the Property in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA. Once said inspection has been completed, the Plaintiff may amend this complaint in order to provide proper notice to the Defendant regarding the full scope of this action.[13]

39. Plaintiff, and other mobility impaired persons, will continue to suffer discrimination, injury, and damage without the immediate relief provided for by the ADA and requested herein.

40. Defendant has discriminated against Plaintiff, and other mobility impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

41. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in nature.[14]

---

[13] *See Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, they can sue to have all barriers that relate to their disability removed regardless of whether or not they personally encountered them); *accord Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d Cir. 2013) (per curiam) (plaintiff who used a wheelchair had standing to challenge barriers at a restaurant related to his disability that he had not yet encountered); *Steger v. Franco, Inc.*, 228 F.3d 889 (8th Cir. 2000) (plaintiff who encountered a barrier had standing to challenge other barriers at the property related to his disability).

[14] 42 U.S.C. § 12182(b)(2)(A)(iv).

42. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to make reasonable modifications in policies, practices, or procedures, including its reservation policies, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities – including, as described above, by placing floor mats and other objects within the accessible routes, by failing to maintain its accessible features, and by failing to provide accurate accessibility information through its reservation services.[15]

43. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to undertake such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[16]

44. Pursuant to 28 C.F.R. § 36.304(a) the Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable; this duty began at the outset of the ADA for all existing facilities (regardless of age) and remains continuous and ongoing.

45. The ADA contains no "grandfather" provision. Title III's barrier-removal obligation applies to every existing place of public accommodation without regard to when it was constructed,[17] and the "grandfather" provisions often found in local building codes do not exempt a public accommodation from its obligations under the ADA.[18] A facility's age bears only on which standard governs a given element, not on whether the ADA applies; the sole protection the

---

[15] 42 U.S.C. § 12182(b)(2)(A)(ii).
[16] 42 U.S.C. § 12182(b)(2)(A)(iii).
[17] 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R. § 36.304(a).
[18] U.S. Dep't of Justice, Civil Rights Div., *ADA Update: A Primer for Small Business* (Mar. 2011).

regulations afford existing elements is the limited safe harbor of 28 C.F.R. § 36.304(d)(2), which applies only to elements that already comply with the 1991 Standards.

46. If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993,[19] then the Defendant's facility must be readily accessible to and usable by individuals with disabilities in accordance with the 1991 Standards or, for construction commenced on or after March 15, 2012, the 2010 Standards.[20]

47. Pursuant to 28 C.F.R. § 36.402(a)(1), "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Maurer, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[21] Discovery in this matter will reveal if and when such alterations have taken place at the Property, and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Property into compliance with the ADA.

48. 28 C.F.R. § 36.304(d)(2) controls with respect to the corresponding technical and scoping specification to which each element that has not been altered must comply with or be modified to meet. Those are defined as follows:

a. Elements that have not been altered on or after March 15, 2012, and that comply with the corresponding technical and scoping specifications in the 1991 Standards, are not required to be modified to comply with the 2010 Standards.

---

[19] As defined by 28 C.F.R. § 36.401(a)(2).
[20] 28 C.F.R. § 36.406(a).
[21] 28 C.F.R. § 36.402(a)(2).

b. Before March 15, 2012, elements that did not comply with the 1991 Standards were required to be modified to comply with either the 1991 Standards or the 2010 Standards.

c. On or after March 15, 2012, elements that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

49. Plaintiff is not required to notify the Defendant of its violation of the ADA nor its ongoing discrimination prior to the filing of this action. To that end, Mr. Maurer has found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In his experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

50. Plaintiff is without adequate remedy at law and is suffering irreparable harm, including injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

51. Pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, Plaintiff is entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

52. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Property and make such readily accessible to and usable by the Plaintiff and all other persons with disabilities as defined by the ADA.

**WHEREFORE**, Plaintiff respectfully demands:

a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b. Injunctive relief against the Defendant including an order to (1) cure all ADA violations existing at the Property listed herein – and those later found through discovery – within the next six months; (2) make the Property accessible to and usable by individuals with disabilities; (3) require the Defendant to make reasonable modifications in policies, practices, or procedures, to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services; and (4) require the Defendant to bring its reservation services, including those offered through third parties, into compliance with 28 C.F.R. § 36.302(e).

c. An Order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property – as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses (including expert fees and costs) pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

## COUNT II
## Violation of New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*

53. Plaintiff realleges and incorporates, by reference, all of the allegations contained in all of the preceding paragraphs.

54. The Property is a place of public accommodation as defined by N.J.S.A. 10:5-5.

55. New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation

without discrimination on the basis of disability. This opportunity is recognized and declared to be a civil right.[22]

56. As set forth above, the Defendant has violated the LAD by denying Mr. Maurer, and all other mobility impaired persons, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

57. As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Maurer has sustained injury through the Defendant's actions – either intentionally or negligently – in the form of emotional distress, mental anguish, dignitary harm, and humiliation; in violation of the LAD.

**WHEREFORE**, Plaintiff respectfully demands:

a. That this Court assume jurisdiction.

b. The Court issue a Declaratory Judgment determining that the Defendant is in violation of the LAD.

c. An injunction ordering the Defendant to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.

d. A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted – attorney's fees, and litigation expenses, including expert fees and costs.

e. An order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property – as required by the LAD.

f. Other relief that this Court deems just and proper and is allowable under the LAD.

---

[22] N.J.S.A. 10:5-4.

Respectfully submitted on this 28th day of October 2026,

*/s/ Jon G. Shadinger Jr.*
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
2220 N. East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*